**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                              No. 98-4420

FORREST WILLIAM HAMM,
Defendant-Appellant.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Benson E. Legg, District Judge.
(CR-97-6-L)

Submitted: December 22, 1998

Decided: January 25, 1999

Before WIDENER and WILKINS, Circuit Judges, and HALL,
Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

James Wyda, Acting Federal Public Defender, Baltimore, Maryland,
for Appellant. Lynne A. Battaglia, United States Attorney, Tarra
DeShields, Assistant United States Attorney, OFFICE OF THE
UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Forrest Hamm pled guilty to possession with intent to distribute cocaine, conditioned upon his right to appeal the district court's denial of his motion to suppress evidence seized during a traffic stop. On appeal, Hamm challenges the district court's finding that his continued detention following the stop until a drug-sniffing dog was brought to the scene was reasonable. Finding no error, we affirm.

The reasonableness of a search or seizure is a legal conclusion which we review de novo. The factual findings underlying the legal conclusions are reviewed for clear error. See United States v. Rusher, 966 F.2d 868, 873 (4th Cir. 1992). Hamm does not challenge the district court's findings of fact which showed that he was stopped for speeding by Maryland State Trooper Steven Jones on Interstate 95 in Maryland just after midnight on December 12, 1996.*

Trooper Jones testified that several aspects of Hamm's behavior during initial questioning had created a reasonable suspicion of unlawful activity. Hamm stated that the person who rented the vehicle he was driving, Mark Hamlin, was a Maryland resident. In contrast, the rental agreement listed a Florida's driver's license for Hamlin. In addition, the rental agreement listed the same address in Miami, Florida for both Hamm and Hamlin. It also listed identical license numbers for both Hamm and Hamlin. After Jones questioned Hamm about Hamlin's residency, Hamm changed his story and stated that Hamlin rented the vehicle because Hamlin would receive a corporate discount. Hamm had an unusual travel itinerary, flying from Miami to Baltimore and then driving to Newark. Though Hamm related to

_____

*After Hamm passed Jones who was sitting in the median, Hamm hit the brakes and slowed from 75 miles per hour in a 65 zone to 52 miles per hour.

2

Jones that he had gone to Newark for a funeral, Hamm stayed ten days after the funeral. Hamm first told Jones that the funeral was for his grandmother, but then changed his story and stated it was for a friend's grandmother. Hamm had difficulty providing the name of the deceased.

After Jones observed these events, he received a report of Hamm's criminal history from the radio dispatcher whom he had called in the course of writing a warning citation for Hamm. The dispatcher reported that Hamm had a past arrest for a narcotics violation. When asked about his past criminal history, Hamm was evasive about his past arrest and conviction. During the time that Hamm was stopped, Hamm appeared to be unusually nervous. The district court found that all of this suspicious behavior occurred during the period of time in which Jones was constitutionally permitted to detain and question Hamm. The court also found that the reasonable suspicion generated by Hamm's behavior justified Jones' decision to detain Hamm while a canine was brought to the scene.

The dog alerted in the area of the trunk of the car. Jones then searched the vehicle and discovered twenty bricks of cocaine.

Hamm concedes that Jones had the authority to detain him for speeding. His primary argument is that the district court erred in finding that the behavior it identified gave rise to the requisite reasonable suspicion necessary for Jones to continue to detain him and subject his car to the canine sniff. Hamm also claims that the district court erred in relying upon his answers to Jones' questions about his prior arrest record. He contends that these questions exceeded the scope of the traffic stop.

Hamm correctly notes that absent consent to do more, a routine traffic stop permits an officer to detain a motorist only for the limited purposes of requesting a driver's license and vehicle registration, running a computer check, and issuing a citation. See Rusher, 966 F.2d at 876. Here, however, once Hamm failed to produce a valid registration certificate, Jones was entitled to investigate further without violating the dictates of Rusher. The factors cited by the district court which manifested themselves prior to Jones asking Hamm about his prior arrest record created the reasonable suspicion to support the

3

criminal history check and the related questioning. See United States v. Finke, 85 F.3d 1275, 1280 (7th Cir. 1996). Hamm's answers up to that point raised the suspicion that he could be driving a vehicle while not authorized to do so.

Hamm's prior arrest for a drug offense and his evasive answers about his arrest record provided additional grounds for Jones to reasonably suspect that Hamm was involved in serious criminal activity. While any one factor identified by Jones may not be proof of illegal conduct and may be consistent with innocent travel, the district court properly considered all factors as a whole in making a reasonable suspicion determination. See United States v. Sokolow, 490 U.S. 1, 9 (1989). Upon the factual findings made by the district court, we have no difficulty concurring that Jones' decision to extend the length of Hamm's detention beyond the original traffic stop to obtain a drug-sniffing dog for further investigation did not offend constitutional requirements. See Rusher, 966 F.2d at 876-77 (further detention for questioning requires reasonable suspicion of serious crime).

Accordingly, we affirm. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and argument would not aid the decisional process.

AFFIRMED

4